## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-CV-22770-RAR
### (18-CR-20664-RAR)

**FABIAN ANTHONY PERPALL**,

     Movant,

v.

**UNITED STATES OF AMERICA**,

     Respondent.

_____/

### <u>ORDER DENYING MOTION TO VACATE</u>

**THIS CAUSE** comes before the Court on Movant Fabian Anthony Perpall's Motion to Vacate under 28 U.S.C. § 2255. *See* Motion to Vacate ("Mot.") [ECF No. 1]. Respondent filed a Response to the Motion, *see* Response ("Resp.") [ECF No. 13], and Movant filed a Reply to that Response, *see* Reply [ECF No. 16]. Having reviewed the pleadings, Movant's criminal docket, and the applicable law, the Court finds that Movant has failed to demonstrate he is entitled to relief and **DENIES** the instant Motion.

### <u>PROCEDURAL HISTORY</u>

Movant was charged by Second Superseding Indictment with two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). *See* Second Superseding Indictment, *United States v. Perpall*, No. 18-cr-20664 (S.D. Fla. June 12, 2019), ECF No. 86 at 1–2. The Government alleged that Movant, a convicted felon, improperly possessed a firearm on two different dates: once, on July 13, 2018, when Movant confronted Tavoris Odom with a firearm and "began shooting at Odom," and again on July 17, 2018, when law enforcement "observed a black gun in the center console [of Movant's vehicle]" after a "high-speed chase through a

residential neighborhood." *United States v. Perpall*, 856 F. App'x 796, 797 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 562 (2021).

On August 2, 2019, a jury found Movant guilty of both counts as charged in the Second Superseding Indictment. *See* Verdict, *United States v. Perpall*, No. 18-cr-20664 (S.D. Fla. Aug. 5, 2019), ECF No. 117 at 1–2. In accordance with the jury's verdict, the Court sentenced Movant to a total term of 240 months—comprised of two, consecutive 120-month sentences on each count. *See* Judgment, *United States v. Perpall*, No. 18-cr-20664 (S.D. Fla. Nov. 13, 2019), ECF No. 159 at 2. Movant appealed his convictions and sentences to the United States Court of Appeals for the Eleventh Circuit, arguing that the trial court "should not have admitted [ ] evidence of [Movant's] prior convictions" under Federal Rule of Evidence 404(b). *Perpall*, 856 F. App'x at 798. The Eleventh Circuit affirmed, holding that "the district court did not abuse its discretion either in finding that the prior convictions were relevant to intent or accident or in its Rule 403 balancing[.]" *Id.* at 800–01. The United States Supreme Court denied Movant's Petition for Writ of Certiorari on November 22, 2021. *See Perpall*, 142 S. Ct. at 562. Movant timely filed the instant Motion on August 25, 2022.[1] *See* Mot. at 12.

## STANDARD OF REVIEW

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on a final judgment, pursuant to 28 U.S.C. § 2255, are extremely limited. A prisoner is only entitled to relief under § 2255 if the court imposed a sentence that: (1) violated the Constitution or laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum authorized by law; or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United*

---

[1] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

*States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).  Thus, relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)).  If a court finds a claim under § 2255 valid, the court "shall vacate and set the judgment aside shall discharge the prisoner or resentence him or grant a new trial or correct the sentence." 28 U.S.C. § 2255(b).  The § 2255 movant "bears the burden to prove the claims in his § 2255 motion." *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015).

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e."  U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To prevail on a claim of ineffective assistance of counsel, the movant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88).  "Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*." *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009).

Regarding the deficiency prong, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take" during the proceedings. *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).  If "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel did not perform

deficiently.  *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong, "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  If a postconviction movant has pled guilty to the underlying offenses, the prejudice prong is modified so that the movant is instead required to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## **ANALYSIS**

Movant asserts ten grounds for relief in his § 2255 motion.  Eight of the Motion's grounds allege ineffective assistance of counsel, whereas the other two grounds assert that the prosecution engaged in misconduct.  After reviewing all ten of the Motion's grounds for relief, the Court agrees with Respondent that all ten grounds are without merit.

### **I.    Ineffective Assistance of Counsel Claims: Grounds One, Two, Four, Five, Six, Seven, Eight, and Nine**

#### *A.  Ground One*

Movant avers in Ground One of the Motion that his appellate counsel was ineffective for failing to argue on direct appeal "that [the] district court had committed reversible error when it had precluded Petition from calling [a] Defense witness to testify."  Mot. at 14.  According to Movant, he and his trial attorney planned to call Lamont Riley, Movant's codefendant in a state criminal matter, at trial with the expectation that Riley would "reveal that [the] victim had made

inaccurate and false statements regarding the identity of [the person] who shot him." *Id.* However, despite Riley's apparent prior willingness to testify, the Court prevented Movant from calling Riley as a witness after Riley's attorney informed the Court "that [the] testimony of her client Mr. Riley would [incriminate] himself." *Id.* at 16. Movant insists that the Court's decision here was erroneous since "[t]here was no way Mr. Riley could have incriminated himself" and that appellate counsel should have raised this issue before the Eleventh Circuit. *Id.*

Respondent requests that the Court deny Ground One as "frivolous." Resp. at 9. The Court agrees. As Movant correctly recounts, the Court initially issued a Writ of Habeas Corpus ad Testificandum which ordered Riley to be transported from the Miami-Dade County Department of Corrections so that he could testify at Movant's trial. *See* Writ of Habeas Corpus ad Testificandum, *United States v. Perpall*, No. 18-cr-20664 (S.D. Fla. July 12, 2019), ECF No. 101 at 1–2. However, mere days before trial, Riley's Assistant Public Defender, Nahid Noori, appeared at calendar call and moved to quash the writ on the basis that Riley would be "invoking his Fifth Amendment right" not to incriminate himself. Calendar Call Tr., *United States v. Perpall*, No. 18-cr-20664 (S.D. Fla. Dec. 23, 2019), ECF No. 169 at 3; *see also id.* at 5 ("Ms. Noori: I was just going to say that [Riley] was advised by me not to testify and he was advised to invoke his Fifth. So he will not be testifying."). In response to Ms. Noori's *ore tenus* motion, Movant's trial attorney explained that he advised Movant about "how a Fifth Amendment invocation goes and that [it] would be out of the presence of the jury, and the jury wouldn't even know Lamont Riley was attempted to be called as a witness for the defense[,]" but also admitted that Movant "would still like me to call Lamont Riley" *Id.*

After hearing from Ms. Noori and Movant's trial counsel, the Court agreed "the right course of action" was to quash the writ. *Id.* at 4. However, before doing so, the Court addressed Movant directly and specifically explained why it decided that it could not force Riley to testify:

> Mr. Perpall, you know, the issue here is we're not going to have a scenario where this witness will be here on the stand and the bottom line is if they're going to be on the stand, it's going to be only in front of me, and the value of having that witness called is really nonexistent because the witness, through his attorney, has indicated he plans on invoking his Fifth Amendment right to remain silent and is never going to testify, and I would not—let's put it this way: I would not have him in front of the jury basically for spectacle going up there and invoking the Fifth. Once I hear from him and he tells me he's not going to do so or he's not going to testify, as counsel has represented, I'm not going to have to him brought just so that we go through that exercise to delay the trial. If there was any chance that he was going to say anything, I'm all for it. I mean, that's why I issued the writ in the first place, but we're hearing now that he doesn't want to testify, so there's not much I'm going to do. I'm definitely not going to drag him up just to have him invoke his Fifth in my presence.

*Id.* Respondent argues that the Court's reasoning was sound since Riley's invocation of the Fifth Amendment (through counsel) meant that "forcing Riley to testify would be a fruitless waste of time." Resp. at 10.

The Fifth Amendment's privilege against compulsory self-incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444–45 (1972). It is "improper to put a witness on the stand for the purpose of having the witness invoke her Fifth Amendment privilege against self-incrimination before the jury because doing so would invite the jury to draw an improper inference." *United States v. Feliciano-Francisco*, 701 F. App'x 808, 813 (11th Cir. 2017) (emphasis added) (citing *United*

*States v. Lacouture*, 495 F.2d 1237, 1240 (5th Cir. 1974)).  To summarize the relevant precedent, a witness is entitled to invoke his right to silence under the Fifth Amendment, even if he merely <u>suspects</u> that his testimony could later incriminate him, which would then preclude that witness from being called at trial.

Here, Ms. Noori was unequivocal: she had advised Riley to invoke his Fifth Amendment right against self-incrimination and not testify at Movant's trial—advice Riley apparently agreed with and followed.  *See* Calendar Call Tr., *United States v. Perpall*, No. 18-cr-20664 (S.D. Fla. Dec. 23, 2019), ECF No. 169 at 5. At that point, Riley's usefulness as a witness had evaporated— he could no longer be called to testify at trial on Movant's behalf no matter how useful that testimony would have been to Movant.  *See United States v. Bolts*, 558 F.2d 316, 324 (5th Cir. 1977)[2] ("Bolts has no constitutional right to compel Mrs. Hicks to take the stand and testify when it was known in advance that she intended to assert the [Fifth Amendment] privilege."); *see also Brown v. Walker*, 161 U.S. 591, 602 (1896) ("The constitutional privilege of the witness protects, not another against whom the witness testifies, but the witness himself.").

But that's not all.  During the trial, Movant told his attorney that he had seen Riley "in the marshal's hold cell" and that Riley again told Movant that "he would be a defense witness for Fabian Perpall."  Day 3 Trial Tr., *United States v. Perpall*, No. 18-cr-20664 (S.D. Fla. Dec. 23, 2019), ECF No. 172 at 3.  The Court swiftly arranged for Riley and his attorney to appear telephonically, where the following colloquy occurred:

> [The Court:] So the simple question I'm going to ask you at this time, and you've already been advised by your lawyer and you are under oath, Mr. Lamont Riley, do you wish to testify in this case? Yes or no, sir?

---

[2]  The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981.  *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[Riley:]  No.

The Court:  No.  Thank you.  So to be clear, Mr. Riley, you are invoking your right to remain silent in the matter of United States versus Perpall; is that correct?  Yes or no?

[Riley:]  Yes, sir.

*Id.* at 82–83.  The Court finds that this conversation conclusively and irrefutably rebuts Movant's argument.  Riley unequivocally stated under oath that he did not want to testify at Movant's trial and was invoking his Fifth Amendment privilege against self-incrimination.  Since the Court correctly prevented Riley from testifying after he invoked his Fifth Amendment right, appellate counsel could not have been ineffective "for failing to raise claims reasonably considered to be without merit."  *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (internal quotation omitted).[3]  Accordingly, Ground One is **DENIED**.

### B.  Ground Two

Movant argues in Ground Two of the Motion that trial counsel was ineffective "for failing to impeach [the] Government's star witness, Mr. Tavoris Odom."  Mot. at 17.  Movant contends that Odom's testimony at trial was rife with "inconsistent statements" since it was materially different from the statement he had originally given to law enforcement.  *See id.* at 17–19.  Respondent avers that counsel "did address Odom's past statements" and the Court should not second-guess the specific nature of counsel's cross-examination of Odom.  Resp. at 11–12.

---

[3]  Movant's contention appears to be that Riley had "reached out to the defendant expressing a willingness to testify on [his] behalf," but that Ms. Noor subverted Riley's will by falsely claiming that Riley had exercised his Fifth Amendment right not to testify.  Mot. at 14–15.  Movant speculates that, had Riley been forced to testify at his trial, Riley would not have utilized the Fifth Amendment and would have instead provided exculpatory testimony.  *See id.*  This argument has no factual basis and is instead premised on improper and self-serving speculation—especially since Riley explicitly invoked the Fifth Amendment under oath.  *See Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner[.]").

"The decision as to whether to cross-examine a witness is 'a tactical one well within the discretion of a defense attorney.'" *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (quoting *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985)).  When reviewing an attorney's performance under *Strickland*, his or her tactical decisions are "presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315.  The complete failure to "impeach [a] key prosecution witness with prior inconsistent testimony" is generally considered an unreasonable tactical decision that can form the basis of an ineffective assistance of counsel claim.  *Fugate*, 261 F.3d at 1219.  However, counsel's failure to impeach a witness in a specific way is not ineffective assistance of counsel since "[the mere fact] that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffective assistance of counsel."  *Waters*, 46 F.3d at 1514 (quoting *Foster v. Dugger*, 823 F.2d 402, 406 (11th Cir. 1987)); *see also Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019) (holding that counsel's failure to "us[e] all impeachment material during the [trial]" was not ineffective assistance of counsel since there was no reasonable probability "the result of [the] trial would have been different").

Contrary to Movant's assertions, his trial counsel frequently and doggedly impeached Odom on cross-examination.  Counsel attempted to get Odom to admit that he had previously reported that Lamont Riley, not Movant, had shot at him.  *See* Day 2 Trial Tr., *United States v. Perpall*, No. 18-cr-20664 (S.D. Fla. Dec. 23, 2019), ECF No. 171 at 113.  Counsel also successfully revealed to the jury that Odom had been selling drugs and that he had originally lied to the police to conceal this fact.  *See id.* at 125 ("Q: So when you held back or you didn't tell her the truth, and you falsely stated details, you did that intentionally, didn't you?  A: It was not

intentional.  I didn't want to—I was actually scared really, to be honest, because I didn't want to admit I was selling drugs.").  Counsel was then able to get Odom to admit that he didn't reveal his drug dealing past until after the Government granted him immunity.  *See id.* at 134–36.  This level of impeachment was clearly a reasonable tactical decision as it allowed counsel to attack Odom's credibility as a witness.  *See* Day 3 Trial Tr., *United States v. Perpall*, No. 18-cr-20664 (S.D. Fla. Dec. 23, 2019), ECF No. 172 at 245 ("You're asked to believe Tavoris Odom is telling the truth. I suggest that he isn't.  Tavoris Odom is a drug addict, a drug dealer selling Molly."); *id.* at 250–51 ("You also heard Tavoris Odom lied to the police, lied to the robbery bureau.  Then when he gets immunity from prosecution from the government, he tells a different story about the drug deal. . . . He's evasive.  He's dancing.  He's not being truthful.  He's not being truthful in a court of law under oath, and he's not being truthful to you.").

Movant alleges that counsel still could have impeached Odom on other inconsistent statements; for example, Movant represents that Odom had previously lied about the length of time he personally knew Movant.  *See* Mot. at 20 ("Mr. Odom claims to have went to school with Petitioner. . . . Petitioner and Mr. Odom never went to school together at all nor known each other for ex amount of years.").  Even if this was a valid basis to impeach Odom, the Court finds that counsel was not ineffective for failing to impeach Odom <u>more</u>.  For one, counsel cannot perform deficiently merely because "other testimony might have been elicited."  *Fugate*, 261 F.3d at 1218 (citing *Waters*, 46 F.3d at 1514); *see also Ether v. Dixon*, No. 20-cv-60241, 2022 WL 1908918, at *18 (S.D. Fla. June 3, 2022) ("[T]he decision to impeach (or not impeach) a particular witness with a specific piece of evidence is precisely the kind of strategic choice we rarely second-guess on collateral review.").  For another, Movant fails to explain how "the result of his trial would have been different" if counsel had impeached Odom more than he already did at trial.  *Meders*,

911 F.3d at 1354.  Counsel's strategy was clear: portray Odom as an untrustworthy drug dealer to the jury so they would disbelieve Odom's identification of Movant as the shooter.  Despite counsel's best efforts, the jury believed Odom, and there is no reason to think that additional impeachment would have changed the jury's minds.  *See Cutaia v. Sec'y, Dep't of Corr.*, No. 10-cv-1170, 2011 WL 4356160, at *11 (M.D. Fla. Sept. 19, 2011) (citing *United States v. Hewitt*, 663 F.2d 1381, 1386 (11th Cir. 1981)) ("A jury has the right to believe or disbelieve any witness, even if Petitioner disagrees with the jury's decision.").  Since counsel reasonably impeached Odom at trial, Ground Two is **DENIED**.

### C. *Ground Four*

Movant alleges in Ground Four that counsel was ineffective when he "failed to object to the introduction of evidence . . . of a non-testifying witness."  Mot. at 23.  Movant argues that counsel should have objected when the Government used the "inadmissible evidence of Officer John [Song] to be produced during trial" because Officer Song never appeared at trial and could not be cross-examined.  *Id.*  Respondent explains that, although "the government never called Song to testify or used his testimony at trial[,]" Song was "mentioned in testimony by other officers" and that Song's body camera footage was admitted into evidence.  Resp. at 13.  The Confrontation Clause only applies to "testimonial statements made out of court by a declarant whom the defendant has a constitutional right to confront through cross-examination."  *United States v. Charles*, 722 F.3d 1319, 1322 (11th Cir. 2013).  The Government never presented a "testimonial statement" made by Officer Song at trial, so Movant did not have the right to cross-examine Song about those statements.

Even if the Court assumes that it was improper for the Government to use Officer Song's body camera footage at trial, Movant fails to show that he was prejudiced.  Officer Song's body

camera was admitted concurrently with the body camera of Officer Josue Acevedo. *See* Day 2 Trial Tr., *United States v. Perpall*, No. 18-cr-20664 (S.D. Fla. Dec. 23, 2019), ECF No. 171 at 20–21. Officer Acevedo testified at trial that the body camera footage of both cameras "accurately reflect[ed] what [he] saw with [his] own eyes that night[.]" *Id.* If Officer Song's body camera was improperly admitted, Officer Acevedo's <u>properly admitted</u> body camera video would have still shown the same events as Officer Song's video. *See id.* at 22–23 (establishing that Officer Song's body camera "reflects what [Officer Acevedo] saw with [his] own eyes that night"). Since there is no "reasonable probability" the outcome of the trial would have been different if counsel had objected to the admission of Officer Song's body camera, Movant was not prejudiced. *See Strickland*, 466 U.S. at 694. Ground Four is thus **DENIED**.

### D. Ground Five

In Ground Five, Movant avers that counsel was ineffective by "failing to object to Petitioner being shackled and bond [sic] during the entire trial proceedings." Mot. at 24. This is false. Counsel requested during calendar call that Movant "not be handcuffed during the trial" and that his feet "not be shackled." Calendar Call Tr., *United States v. Perpall*, No. 18-cr-20664 (S.D. Fla. Dec. 23, 2019), ECF No. 169 at 41. This request was partially successful: although Movant was not handcuffed, the marshals insisted that their "standard procedure is to shackle a defendant who is in custody." *Id.* To ameliorate any prejudicial effect, the Court assured Movant it would take steps to ensure that the jury would be unable to see his leg shackles. *See id.* at 42 ("[I]n here, [the jury] can't see your feet and I will make certain of that even if I have to block it with a chair, I do that all the time. So don't worry about it. But I will take great lengths to make sure that [the jury] can't see any of that."); *see also United States v. Battle*, 173 F.3d 1343, 1346 (11th Cir. 1999) (holding that the trial court "took reasonable steps to hide the chosen restrains from the jury" by

"drap[ing] [a cloth] from the table to hide the leg shackles"). Although Movant insists that the leg shackles "inflamed the jurors," Movant provides no evidence that any juror saw his shackles. Mot. at 24. Because counsel attempted to have Movant's shackles removed and, in any event, there is no evidence the jury realized Movant was shackled, Ground Five is **DENIED**.

### E. *Grounds Six and Seven*

Grounds Six and Seven of the Motion concern counsel's alleged ineffectiveness in failing to present an alibi defense. In Ground Six, Movant argues that counsel should have moved for a mistrial after learning that Hilda Sumptor, Lamont Riley's mother, "put on evidence of his innocense [sic] and his location at the time of this alledge [sic] shooting of Mr. Odom." Mot. at 25.[4] In a similar vein, Movant claims in Ground Seven that counsel was ineffective "for failing to investigate and call alibi defense witness Monique Brown" since Ms. Brown could testify about Movant's whereabouts at the time of the July 17, 2018 high-speed car chase. *Id.* at 26. The Court will treat Grounds Six and Seven as one unitary claim alleging that counsel was ineffective for failing to investigate and call two witnesses—Sumptor and Brown—who would have established an alibi defense. Respondent makes two counterarguments: (1) counsel "did explore Perpall's claims of innocence and called several other alibi witnesses to testify," and the Court should defer to counsel's strategic decisions in calling specific alibi witnesses; and (2) Movant failed to demonstrate prejudice since he does not explain how Sumptor and Brown's testimony "would have resulted in a different outcome." Resp. at 15.

The Court agrees with both of Respondent's points. First, Movant's counsel unquestionably called multiple witnesses who testified that Movant was nowhere near the site of

---

[4] Movant also alleges in Ground Six that Mr. Riley possessed exculpatory information, but, as the Court already discussed in-depth when it denied Ground One, counsel could not have been ineffective for failing to rely on Mr. Riley as a witness since he had invoked his right to silence under the Fifth Amendment.

the shooting when it happened.  *See, e.g.*, Day 3 Trial Tr., *United States v. Perpall*, No. 18-cr-20664 (S.D. Fla. Dec. 23, 2019), ECF No. 172 at 87 ("Q: Where was Fabian Perpall?  A: Around me and the rest of my family members at the house."); *id.* at 98–99 ("Q: And referring to that time frame of July 12th to July 15th of 2018 of last summer, do you know where Fabian Perpall was during that time?  A: Yes. . . . He was in our apartment.  He was at Quamisha['s] house."); *id.* at 107 ("Q: Referring or directing your attention to July 12th to July 15th of 2018, which is last summer, did you have occasion to see Fabian Perpall during that time?  A: Yes. . . . He had came over.  He was over for a few—a couple of days.").  According to these witnesses, Perpall was staying at an apartment in Opa-Locka, Florida, with other family members at the time Odom was shot near Perrine, Florida, and did not have the occasion to leave the apartment for several days. *See id.* at 87–89.

"Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."  *Waters*, 46 F.3d at 1512.  Here, counsel called at least <u>three</u> witnesses who all testified that Movant was in a completely different city at the time the victim was shot.  The mere fact that counsel could have hypothetically called two more witnesses who would have (presumably) repeated this alibi is not a sufficient basis for an ineffective-assistance-of-counsel claim.  *See Foster*, 823 F.2d at 406 ("The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel.").

Second, Movant fails to show how his defense was prejudiced because Sumptor and Brown did not testify.  The Court reminds Movant that he, not the Government, "bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim[.]"  *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001).  Movant therefore must show that there is a

"reasonable probability that the alibi testimony of [Sumptor and Brown] would have changed the outcome of [his] trial." *Wellington v. Moore*, 314 F.3d 1256, 1263 (11th Cir. 2002). Movant fails to meet his burden since he doesn't allege what either Sumptor or Brown would have said at trial to support his alibi defense. *See* Mot. at 25–26.[5] The Court is also highly skeptical that the hypothetical testimony of these two witnesses would have had a "reasonable probability" of changing the outcome of the case, as the jury already heard from (and rejected) the testimony of multiple witnesses who insisted that Movant was nowhere near the shooting at the time it occurred. *Cf. Denis v. United States*, No. 05-23089, 2009 WL 1563543, at *23 (S.D. Fla. June 2, 2009) ("[C]onfidence in the outcome of this case is not undermined by the missing testimony of the alibi witnesses and evidence. The alibi defense proffered by Denis was not strong; the government's case was overwhelming; and, therefore the undersigned concludes that, assuming counsel's investigation was deficient, there is no reasonable probability that the result of the trial would have

---

[5] In his Reply, Movant now claims that "[t]here's a sworn affidavit attached to Petitioner's post-conviction motion stating that Ms. Brown testimony would assert that there's no way Petitioner could have been seen by Officer Menoud at the time he say he seen Petitioner due to him at Ms. Brown resident and with her the entire time up an til about 8:30 the night of July 17, 2018." Reply at 3 (errors in original); *see also* Affidavit [ECF No. 1-1]. Although Movant does not say so, this proposed testimony is meant to rebut Officer Menoud's testimony at trial that he "instantly" recognized the driver of a vehicle as Movant before a high-speed chase ensued on July 17, 2018. *See* Day 1 Trial Tr., *United States v. Perpall*, No. 18-cr-20664 (S.D. Fla. Dec. 23, 2019), ECF No. 170 at 186. This argument is patently frivolous. Officer Menoud testified that, after the conclusion of the high-speed chase, the driver "jumped out of [the vehicle], and began to run southbound." *Id.* at 196. The same person who fled the vehicle was quickly apprehended by law enforcement and that person was identified as Movant. *See id.* at 196–97; *see also id.* at 212 ("Q: How good was your view when you passed him on the road and identified him? A: 100 percent. Q: How good was your view at the end of the car chase when you apprehended him? A: 100 percent the same person. Q: And who did you see? A: Mr. Fabian Perpall."). In other words, even if Officer Menoud's initial identification of Movant as the driver was flawed, he was later proven right since the driver was identified as Movant after he was caught. Counsel could not have been ineffective for failing to call Ms. Brown to present an alibi defense at trial since her testimony would have easily been discredited by the Government's witnesses. *See Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 563–64 (11th Cir. 2009) ("If counsel made the decision not to call Washington for strategic reasons—if, for example, he spoke with Washington and decided that his testimony would not be helpful or that he would not make a credible witness—then this court would not provide relief for such strategic decisions by counsel."). In addition, the "affidavit" Movant refers to was signed by <u>Movant</u>, not Ms. Brown, so its value to the Court is minimal at best.

been different if a more thorough investigation had been conducted."). Since counsel was not ineffective for failing to call redundant witnesses, Grounds Six and Seven are **DENIED**.

### F. Ground Eight

Ground Eight of the Petition avers that trial counsel was ineffective for failing to "present to the jury a sworn affidavit of Petitioner['s] co-defendant Lamont Riley which in fact makes him the driver of the vehicle on the night Mr. Odom was shot." Mot. at 27. Respondent argues that the claim is meritless because counsel reasonably chose to attack the credibility of Odom's identification of Movant as the shooter in other ways. *See* Resp. at 16 ("Perpall's claim fails the performance prong, as counsel has the discretion to use whatever reasonable strategy that is best for Perpall's defense."). Assuming this affidavit would have even been admissible at trial, counsel's apparent decision not to use Riley's affidavit is a matter of trial strategy that the Court cannot second-guess unless "no competent counsel would have taken the action that [trial] counsel [took]." *Chandler*, 218 F.3d at 1315. Movant's argument is that the affidavit would have contradicted Odom's testimony since Odom claimed at trial that Riley was the passenger—not the driver—of the vehicle the shooter was in. *See* Day 2 Trial Tr., *United States v. Perpall*, No. 18-cr-20664 (S.D. Fla. Dec. 23, 2019), ECF No. 171 at 110. The Court fails to see the usefulness of this affidavit. As discussed above, trial counsel attempted to impeach Odom on a number of issues and attacked his credibility as a witness without having to rely on the affidavit of Movant's alleged co-conspirator. The Court finds a competent attorney would decline to rely on Riley's affidavit to impeach Odom since there were other, more reliable ways to do so. In addition, there is no reasonable probability that the jury would have found Odom uncredible if counsel had used the affidavit because the Government could have (and almost certainly would have) attacked Riley's credibility as a witness. Ground Eight is thus **DENIED**.

### G. Ground Nine

Movant's final ineffective assistance of counsel claim in Ground Nine alleges that counsel should have called Officer Quintana to testify at trial. According to Movant, Officer Quintana— the first police officer to arrive at the scene of the shooting—would have testified that Odom "advised Officer Quintana that he did not know who shot him and that the perpetrators was [sic] in a green four door sedan." Mot. at 28. Much like Ground Eight, Ground Nine is yet another attempt by Movant to argue that counsel should have attacked Odom's identification of Movant in different ways. Counsel repeatedly attempted to proffer that Odom's story about who shot him had changed. *See* Day 2 Trial Tr., *United States v. Perpall*, No. 18-cr-20664 (S.D. Fla. Dec. 23, 2019), ECF No. 171 at 96 ("Q: Detective de Cespedes, Tavoris Odom told you that Lamont Riley also shot him on July 13th, 2018; isn't that correct? A: No, sir."); *id.* at 113 ("[Q:] Isn't it true that you told police that Lamont Riley also shot at you on July 13th, 2018? A: No, that is not true."). The jury found that, despite changing his story, Odom's identification of Movant as the shooter was credible. There is no reasonable probability that the jury would have found differently with additional impeachment. *See Strickland*, 466 U.S. at 694. Ground Nine is thus **DENIED**.

## II.   Prosecutorial Misconduct Claims: Grounds Three and Ten

The final two grounds of Movant's Petition allege that the Government committed two discrete acts of misconduct which adversely impacted his defense at trial. First, in Ground Three, Movant claims the Government and Lamont Riley's state public defender purposely obfuscated that "all pending charges against Mr. Riley was in fact dropped months before the trial of Petitioner." Mot. at 21. Since Riley was (allegedly) no longer being prosecuted, Movant argues that Riley's invocation of the Fifth Amendment to avoid testifying at trial was a sham, and that Movant and his counsel would have known this if the Government had not withheld news about

the dropped charges. *See* Reply at 4 ("The Government and Public Defender Ms. Nahid Noor, did in fact conspire together to bolster this case against defendant, by misleading the court that there was a chance Mr. Riley could incriminate himself if he testified about charges he had already exonerated himself on."). Second, Movant avers in Ground Ten that the Government violated *Giglio v. United States*, 405 U.S. 150 (1972) when it "allowed perjured testimony to go uncorrected during trial proceedings when Government star witness victim Tavoris Odom took the stand [and] made several inconsistance [sic] statement after already giving statements of alleged truth at the time of statements giving to detectives of the Miami Dade Police Department." Mot. at 29 (errors in original).

Respondent argues that both of these claims are procedurally defaulted.[6] A claim is procedurally defaulted when "a defendant fails to raise [it] on direct appeal[.]" *Seabrooks*, 32 F.4th at 1384. If a § 2255 movant has procedurally defaulted, he or she is "barred from presenting that claim in a § 2255 proceeding" unless the movant can show either (1) "cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error," or (2) "that he is actually innocent [ ] of the crime of conviction[.]" *McKay*, 657 F.3d at 1196 (citing *Lynn*, 365 F.3d at 1234). Movant once again bears the burden of showing that either one of these exceptions to the procedural default rule applies. *See, e.g., id.* ("Because McKay does not argue on appeal

---

[6] Respondent interchangeably uses the terms "procedurally barred" and "procedurally defaulted" in its Response, but these two phrases have distinct (albeit closely related) meanings. *See* Resp. at 17. A "procedural bar prevents a defendant from raising arguments in a § 2255 proceeding that he raised and [were] rejected on direct appeal. A defendant can overcome a procedural bar when . . . there is an intervening change in law." *Seabrooks v. United States*, 32 F.4th 1375, 1383 (11th Cir. 2022) (cleaned up). In contrast, a "procedural default" occurs when "a defendant raises a new challenge to his conviction or sentence in a § 2255 motion" even though that same issue could have been raised on direct appeal. *Id.* at 1383–84. Since Grounds Three and Ten raise "new" claims, it is clear that Respondent is attempting to invoke "procedural default" (not the "procedural bar") as a defense.

that the cause and prejudice exception applies—nor for that matter did he do so at the district court—we do not address this exception.").

It is undisputed that Movant did not raise <u>any</u> prosecutorial misconduct claims on appeal. *See generally Perpall*, 856 F. App'x at 796–801.  The Court therefore agrees with Respondent that Movant's claims are likely procedurally defaulted.  However, for the sake of judicial efficiency, the Court elects to "skip over" the procedural default issue since both Ground Three and Ground Ten can easily be denied on the merits.  *See Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011) ("When relief is due to be denied even if claims are not procedurally barred, we can skip over the procedural bar issues, and we have done so in the past.").

*First*, Ground Three is plainly meritless.  The basis of Ground Three is Movant's continued belief that Lamont Riley wanted to testify at Movant's trial, but the Government and Riley's attorney conspired to prevent Riley from doing so.  This is contradicted by the record, as Riley himself told the Court that he wanted to invoke his Fifth Amendment privilege and not testify.  *See* Day 3 Trial Tr., *United States v. Perpall*, No. 18-cr-20664 (S.D. Fla. Dec. 23, 2019), ECF No. 172 at 82–83.  Movant's argument that Riley could not incriminate himself is also unavailing.  Even if all of the charges against Riley had been dropped, the Fifth Amendment protects a witness from incriminating himself if he believes that his or her testimony would lead to <u>new</u> charges being filed.  In other words, Riley was well within his rights to invoke the Fifth Amendment even if there were no charges presently pending against him.  *See Kastigar*, 406 U.S. at 445 ("[The Fifth Amendment] protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution <u>or could lead to other evidence that might so be used</u>.") (emphasis added); *see also Hoffman v. United States*, 341 U.S. 479, 486 (1951) ("The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute

but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.").  Finally, the Court also notes that, if the charges against Riley in state court were indeed dropped, that information would have been publicly available on the state court's docket and, therefore, could not form the basis of a prosecutorial misconduct claim.  *See United States v. Stein*, 846 F.3d 1135, 1146 (11th Cir. 2017) (holding that the Government's failure to disclose "a publicly available document filed with a public agency" was not misconduct).  Ground Three is thus **DENIED**.

*Second*, Ground Ten must be denied because Movant fails to prove that a *Giglio* violation occurred.  To establish a *Giglio* violation, "the defendant must show that: (1) the prosecution knowingly used perjured testimony, or failed to correct false testimony upon learning of its falsity; and (2) the use of such testimony was material, meaning that it is reasonably likely that the false testimony could have affected the judgment."  *United States v. Gallardo*, 977 F.3d 1126, 1142 (11th Cir. 2020).  Movant argues that the Government should have known that Odom was lying on the stand since Odom's testimony "is very much inconsistent with [the] original testimony he originally swore to be true to detectives at the beginning of this investigation[.]"  Mot. at 30.  However, "a prior statement that is merely inconsistent with a government witness's testimony is insufficient to establish prosecutorial misconduct."  *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010) (emphasis added); *accord United States v. Grobman*, 550 F. Supp. 3d 1286, 1305 (S.D. Fla. 2021) ("There can be no *Giglio* violation when the witness's prior statement is 'merely inconsistent' with his trial testimony.").  The entire basis of Ground Ten is that Odom's trial testimony was not the same as his original statement to law enforcement, but this is not sufficient to prove a *Giglio* violation.  Odom explained under oath why his statements were inconsistent, and Movant failed to proffer any evidence showing that the Government knew that

Odom's trial testimony (as opposed to his original statement) was false.  *See* Day 2 Trial Tr., *United States v. Perpall*, No. 18-cr-20664 (S.D. Fla. Dec. 23, 2019), ECF No. 171 at 125.  For the foregoing reasons, the Court **DENIES** Ground Ten.

## EVIDENTIARY HEARING

No evidentiary hearing is warranted in this matter.  *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[A] district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record.") (cleaned up).

## CERTIFICATE OF APPEALABILITY

A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition.  Rather, to pursue an appeal, a postconviction movant must obtain a certificate of appealability ("COA").  *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).  Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To do so, litigants must show that reasonable jurists would debate either "whether the [motion] states a valid claim or the denial of a constitutional right" or "whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, reasonable jurists would not find the correctness of the Court's rulings debatable. Accordingly, a COA is denied and shall not issue.

## CONCLUSION

Having carefully reviewed the record and governing law, it is

**ORDERED AND ADJUDGED** that the Motion to Vacate [ECF No. 1] is **DENIED**.  All pending motions are **DENIED as moot**.  Any demands for an evidentiary hearing are **DENIED**, and a certificate of appealability shall **NOT ISSUE**.  The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Fort Lauderdale, Florida, on this 9th day of December, 2022.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:    Counsel of record

      Fabian Anthony Perpall
      180151566
      Miami-Dade County Pre-Trial Detention Center
      Inmate Mail/Parcels
      1321 NW 13th Street
      Miami, FL 33125
      PRO SE